UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHY YORK,<br><br>          Plaintiff,<br><br>    vs.<br><br>TOCHI E. EZENWUGO,<br><br>          Defendant. | Case No. 1:16-cv-01034-AWI-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF No. 30)<br><br>OBJECTIONS, IF ANY, DUE IN 21 DAYS |

**I.    INTRODUCTION**

Dorothy York ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case is proceeding on Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs against Defendant Nurse-Practitioner Tochi E. Ezenwugo ("NP Ezenwugo"). (ECF No. 9). Plaintiff's First Amended Complaint ("1AC"), (ECF No. 8), alleges that Plaintiff sustained a severe injury to the artery and tendon on her right hand when she broke her cell window, and NP Ezenwugo denied a recommendation by a medical doctor for a corrective dynamic splint without any justification, causing further permanent injury to Plaintiff.

NP Ezenwugo has filed a motion for summary judgment arguing that undisputed facts demonstrate that she was not deliberately indifferent to Plaintiff's serious medical needs and

that NP Ezenwugo is entitled to qualified immunity. (ECF No. 30.) For the following reasons, it is recommended that the motion for summary judgment be granted.

## II. PROCEDURAL BACKGROUND

Plaintiff filed the Complaint commencing this action on July 18, 2016. (ECF No. 1.) Plaintiff named only "CDCR Medical" as a defendant. The Court screened the Complaint on November 9, 2016 pursuant to its authority in 28 U.S.C. § 1915A, and found that the monetary relief requested by Plaintiff against a state agency was barred by the Eleventh Amendment to the U.S. Constitution. (ECF No. 9 at 4.) The Court granted Plaintiff leave to file a 1AC in order to name an appropriate defendant. (*Id*. at 5-6.)

On December 13, 2016, Plaintiff filed the 1AC naming NP Ezenwugo as the sole defendant. (ECF No. 8.) The Court screened the 1AC on December 14, 2016, and found that service of the 1AC was appropriate. (ECF No. 9.)

NP Ezenwugo filed the instant motion for summary judgment November 9, 2017. (ECF Nos. 30-36.) When Plaintiff did not timely file a response to the motion, the Court issued an Order to Show Cause why judgment should not be entered in favor of Defendant. (ECF No. 38.) Plaintiff responded on December 22, 2017 with "objections to Defendant's request for summary judgment" and evidence in opposition to the motion for summary judgment.[1] (ECF Nos. 39-40.) On January 3, 2018, NP Ezenwugo filed a reply in support of her motion for summary judgment. (ECF No. 41.)

## III. ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiff alleges that she suffered a severe injury to her artery and tendon on her right hand, causing her to lose usage of her hand and fingers, when she broke her cell window on October 18, 2015. Thereafter, she was treated by a plastic surgeon, Dr. Kohlbrenner, who recommended a "dynamic splint" for Plaintiff's recovery.

Plaintiff claims NP Ezenwugo "refused to treat" her serious injury. Specifically, Plaintiff alleges that she was seen by NP Ezenwugo on November 20, 2015, and NP Ezenwugo

---

[1] The Court construes this filing as a response in opposition to the motion for summary judgment.

2

told Plaintiff that Dr. Kohlbrenner's recommendation did not exist. Plaintiff further claims that NP Ezenwugo is a "medically trained physician" and understood the negative impact it would have on Plaintiff's recovery if she refused to follow Dr. Kohlbrenner's recommendation for a dynamic splint. However, NP Ezenwugo chose to disregard the recommendation "for no reason other than because she could."

As a result of NP Ezenwugo's refusal to treat her, Plaintiff has alleges she has lost all ability to use her hand and seeks monetary relief in the form of compensatory and punitive damages.

### IV. MATERIAL FACTS RELEVANT TO SUMMARY JUDGMENT[2]

At all times relevant to this lawsuit, Plaintiff Dorothy York was an inmate at the Central California Women's Facility ("CCWF") in Chowchilla, California. On October 18, 2015, Plaintiff severely injured her right wrist and forearm (lacerated blood vessel and flexor tendon injury) when she punched through a glass window in her cell area. (DUSUF1) Surgery was performed at nearby Community Regional Medical Center ("CRMC") by a team led by board certified plastic surgeon, Dr. Norio Takayama, M.D. (DSUF2)

Plaintiff returned to CCWF on October 19, 2015 and was prescribed pain medication. (DSUF3) The next day, Plaintiff was treated by Defendant NP Ezenwugo. (DUSF5) NP Ezenwugo prescribed medications, noted Plaintiff's wrist splint and sling, advised Plaintiff to keep her right wrist and forearm elevated in her sling, and noted that Plaintiff had zero sensation in her fingers. (DSUF5) Plaintiff was treated again for pain on October 23, 2015. (DUSF6)

On October 26, 2015, York returned to the CRMC's plastic surgery clinic for a check-up. (DSUF7) Plaintiff reported that she was doing well with pain medication, and she was scheduled to return in two weeks. (DUSF7) Upon her return to CCWF on the same day, Plaintiff was evaluated by CCWF medical staff. (DSUF8) Over the next few days, CCWF

---

[2] On summary judgment, the Court considers the facts in a light most favorable to the nonmoving party. As used herein, "DSUF" means Defendant's Statement of Undisputed Facts (ECF No. 31).

medical staff, including NP Ezenwugo, addressed Plaintiff's complaints regarding a rash on her right hand and pain medication. (DSUF9, 10, 11)

On November 4, 2015, and November 12, 2015, Plaintiff questioned NP Ezenwugo about her prescription for a dynamic splint, and NP Ezenwugo denied that Dr. Kohlbrenner's recommendation for a dynamic splint existed. (ECF No. 39 at 4.) Plaintiff then requested to see the plastic surgeon so she could tell the plastic surgeon that CDCR had yet to order the dynamic splint. (*Id*.) NP Ezenwugo requested a referral for Plaintiff to see the plastic surgeon and treated Plaintiff's pain. NP Ezenwugo attempted to service the dressing on Plaintiff's arm, but Plaintiff refused, claiming that orthopedics told her not to remove the dressing before her follow-up appointment. (ECF No. 35 at 44.)

On November 16, 2015, Plaintiff returned to the CRMC's plastic surgery clinic for a check-up and removal of her sutures. (DSUF17) Plaintiff was seen by Dr. Amanda Kohlbrenner, MD, who prescribed pain medication and instructed as follows:

> Hand therapy ordered- rehab services sierra view. Please call for appointment
> Follow up 4 weeks for evaluation of hand function
> Continue splint for now, pending eval and dynamic splinting by hand therapy
> Hand therapy key to recovery, very important that she gets there

(ECF No. 35 at 52.)

On November 20, 2015, NP Ezenwugo treated Plaintiff for follow-up on her right hand and forearm injury. (DSUF20) NP Ezenwugo discussed Dr. Kohlbrenner's November 16, 2015 recommendation for hand therapy and dynamic splinting with Plaintiff. (DSUF20). Following the appointment, NP Ezenwugo completed and submitted a "Health Care Services Physician Request for Services" form, dated November 20, 2015. (ECF No. 35 at 68.) The order form described the medical necessity (the injury and the plastic surgeon's recommendation) and requested initial, consultative, outpatient services in the form of "Physical therapy for hand therapy and dynamic splinting." (*Id*.) The order form had three choices (Emergent, Urgent, or Routine) for "Requested Treatment/Service is:" and NP Ezenwugo chose "routine." (*Id*.)

4

Also on November 20, 2015, NP Ezenwugo entered a computer order for referral to physical therapy for evaluation and treatment. (ECF No. 35 at 70.) The order is for "physical therapy, Tochi E. Ezenwugo, Nurse Practioner CF, S/P tendon repair rt hand," NP Ezenwugo is listed as the "ordering physician," and the record was entered by "Raymond F Gutierrez, Sup Reg Nur II CF." (*Id.*)

NP Ezenwugo's request was approved on November 23, 2015 and a CDCR "utilization and tracking number" was assigned for scheduling of the outpatient services. (ECF No. 35 at 68.) NP Ezenwugo believed that she had fulfilled her duties as a nurse practitioner by submitting the order, and that the physical therapy and dynamic splinting services would be provided by a licensed hand therapist. (ECF No. 32 ¶ 25.) NP Ezenwugo is not a hand therapist, has no experience in hand therapy, and did not possess the appropriate license or training to provide Plaintiff with hand therapy or dynamic splinting. (*Id.* ¶ 26.) NP Ezenwugo did not understand how a dynamic splint would impact Plaintiff's recovery and did not see any specific instructions regarding a timeframe for Plaintiff to receive a dynamic splint in Dr. Kohlbrenner's recommendation. (*Id.*)

On the same day that NP Ezenwugo ordered physical therapy services (November 20, 2015), Plaintiff submitted a Form 602 Medical Appeal asking for more care and not to be seen by NP Ezenwugo, which the CDCR received on November 23, 2015. (DSUF31)

Over the next few weeks, Plaintiff was continually evaluated and treated by CCWF medical staff, including NP Ezenwugo, for Plaintiff's complaints regarding her pain medication. (DSUF33, 34, 35, 36, 37, 38)

On December 14, 2015, Plaintiff returned to the CRMC's plastic surgery clinic for a check-up. (DSUF39) Dr. Kohlbrenner noted that Plaintiff had "continued nerve pain, very limited passive range but she is working on exercises as instructed in last visit. Just got Neurontin a few days ago, thinks it may be helping." (ECF No. 35 at 84.) Dr. Kohlbrenner noted that "patient must see hand therapist → needs dynamic splint which needs to be ordered by hand therapist-imperative for recovery" and "hand therapy ASAP for exercises and dynamic splinting." (*Id.* at 87.) Plaintiff was to return in two weeks for follow-up. (*Id.* at 85.)

5

Upon her return to CCWF, Plaintiff complained in an inmate grievance submitted on December 15, 2015 as follows:

> I have severe trauma to my right hand, tendon & nerve damages and repair. It was recommended by the doctor at Community Regional Center that I start physical therapy over a month ago so I would have movement in my hand. When I saw the outside doctor today 12-14-15 he said since I haven't had physical therapy yet I'll be lucky to have any movement now at all. I need physical therapy now.

(ECF No. 40 at 105-07.)

The outpatient consultation services for physical therapy ordered by NP Ezenwugo on November 20, 2015 occurred for the first time on December 22, 2015. (ECF No. 35 at 68.) Plaintiff was treated in the prison's physical therapy department for evaluation of hand therapy by licensed physical therapist Dr. Jennifer Adame, DPT (Doctor of Physical Therapy). (DSUF43) Dr. Adame noted "equipment anticipated or recommended: right hand/wrist dynamic splint for increased PROM to all fingers." (ECF No. 35-1 at 8.) Dr. Adame recommended that Plaintiff begin eight weeks of physical therapy for increased range of motion, strength and function. (*Id*. at 9; ECF No. 35 at 68.) Dr. Adame planned treatment of "Manual therapy, Pain management, Patient Education, Therapeutic exercises." (ECF No. 35-1 at 9.)

On December 24, 2015, NP Ezenwugo treated Plaintiff in the CCWF clinic for follow-up after off-site treatment. (DSUF45) NP Ezenwugo reviewed Dr. Kohlbrenner's recommendations from her recent December 14, 2015 appointment, continued Plaintiff's pain medication, and wrote Plaintiff a Durable Medical Equipment pass for a dynamic splint. (ECF No, 35-1 at 12-13.) NP Ezenwugo believed that the prescription for the dynamic splint was being handled in conjunction with the physical therapy services that she had previously ordered for Plaintiff. (DSUF46) NP Ezenwugo had no further involvement with Plaintiff's treatment after this date. (DSUF47)

On December 29, 2015 and January 5, 2016, Plaintiff was seen again for physical therapy services by Dr. Adame. (DSUF50) Dr. Adame noted "PT equipment anticipated or

recommended: right hand/wrist dynamic splint for increased PROM to all fingers." (ECF No. 35-1 at 25.) Dr. Adame noted on January 5, 2016 that she had "contacted yard practitioner to ascertain details of dynamic splint." (*Id*. at 20.)

On January 25, 2016, Plaintiff returned to the CRMC's plastic surgery clinic for a check-up. (DSUF54) Plaintiff was evaluated by her plastic surgeon, Dr. Takayama. (ECF No. 35-1 at 37.) Dr. Takayama noted that "dynamic splinting at this time is not needed as was to protect tendon repairs, now that 3 months post repairs." (*Id*.)

V. **DISCUSSION**

A. **Motion for Summary Judgment Legal Standard**

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). "Once the moving party meets its initial burden, the non-moving party must 'go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1125 (E.D. Cal. 2006) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. "Courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment" or make credibility any determinations. *Zetwick*, 850 F.3d at 441 (citing *Tolan v. Cotton*, --- U.S. ---, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014); *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

Rule 56 does not require that the absence of any factual dispute. *See Hanon v.*

*Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992). Rather, there must be no *genuine* issue of *material* fact. *Id*. (emphasis as in original) (quoting *Anderson v. Liberty Lobby, In*c., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)). "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.'" *Zetwick*, 850 F.3d at 441 (quoting *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015); *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). "On the other hand, the Supreme Court has made clear: 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial,' and summary judgment is appropriate." *Id*. (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### B. Deliberate Indifference to Serious Medical Needs Legal Standard

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), *overruled on other grounds WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an

8

unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi*, 391 F.3d at 1058. Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

**C. Analysis**

*i. Denial of Treatment*

NP Ezenwugo argues that she is entitled to summary judgment because Plaintiff cannot demonstrate a triable issue as to whether NP Ezenwugo was deliberately indifferent to Plaintiff's serious medical needs. NP Ezenwugo testifies in support of her motion for summary judgment that Plaintiff visited the clinic on November 20, 2015, and NP Ezenwugo treated Plaintiff's right hand and forearm injury. (NP Ezenwugo decl., ECF No. 32 at 5 ¶ 20.) NP Ezenwugo recalls that she "expressly discussed" the plastic surgeon's recommendations with Plaintiff, including the plastic surgeon's recommendation for dynamic splinting, and told Plaintiff that she would order the prescription for hand therapy and dynamic splinting. (*Id.*)

Plaintiff argues that NP Ezenwugo's motion for summary judgment should be denied because Dr. Ezenwugo did not provide a copy of the order that she claimed she signed for the dynamic splint in support of her motion for summary judgment. (ECF No. 39 at 3-4.) Plaintiff continues that "NP Ezenwugo has countless witnesses, who are employed at CCWF, stating that she ordered the dynamic splint, yet she has no evidence to submit of her actually ordering it." (*Id.* at 4.) It is also highlighted by Plaintiff that: "The defendant has the Attorney General of California's office representing her" and "has an unlimited amount of access to gather any documentation that's needed to prove her innocence and yet the defendant failed to provide the

court with any documentation that could show that she did in fact order the dynamic splint and that it was not her responsibility to ensure that her patient (Plaintiff York) received it." (*Id*.)

The Court disagrees that NP Ezenwugo failed to support her motion for summary judgment with documentation proving that she properly addressed Dr. Kohlbrenner's recommendation for a dynamic splint.

NP Ezenwugo has submitted evidence indicating that she completed and submitted a "Physician Request for Services form" requesting "physical therapy for hand therapy and dynamic splinting" for Plaintiff. (NP Ezenwugo decl., ECF No. 32 at 5 ¶ 22.) NP Ezenwugo has submitted a copy of a document with her motion for summary judgment titled "Health Care Services Physician Request for Services," dated November 20, 2015, and signed by NP Ezenwugo. (ECF No. 35 at 68.) The document describes the medical necessity (the injury and the plastic surgeon's recommendation) and requests initial, consultative, outpatient services in the form of "Physical therapy for hand therapy and dynamic splinting." (*Id*.) The document also indicates that NP Ezenwugo's request was approved on November 23, 2015 and a CDCR "utilization and tracking number" was assigned. (*Id*.) Finally, the document reflects that a consultation with "J. Adame DPT" occurred on December 22, 2015, and Dr. Adame recommended that Plaintiff was to begin eight weeks of physical therapy for increased range of motion, strength and function. (*Id*.)

Also on November 20, 2015, NP Ezenwugo entered a computer order for referral to physical therapy for evaluation and treatment. (NP Ezenwugo decl., ECF No. 32 at 6 ¶ 23.) The order is for "physical therapy, Tochi E. Ezenwugo, Nurse Practioner CF, S/P tendon repair rt hand," NP Ezenwugo is listed as the "ordering physician," and the record was entered by "Raymond F Gutierrez, Sup Reg Nur II CF." (ECF No. 35 at 70.)[3]

Even construing this evidence in Plaintiff's favor, these documents demonstrate that NP Ezenwugo treated Plaintiff on November 20, 2015, and took Dr. Kohlbrenner's recommendations seriously by ordering physical therapy and dynamic splinting on the same

---

[3] Plaintiff has also submitted a copy of these documents. (ECF No. 40 at 116-118.)

10

day. Additionally, NP Ezenwugo has submitted numerous medical records indicating that she continually evaluated and treated pain associated with Plaintiff's right arm injury. Thus, no reasonable juror could conclude that NP Ezenwugo purposefully denied treatment or "refused to treat" Plaintiff as alleged in the 1AC.

### ii. Delay in Receiving Physical Therapy Services

Although Plaintiff only alleges in the 1AC that NP Ezenwugo "refused to treat" her serious injury, it is also suggested that NP Ezenwugo was deliberately indifferent to Plaintiff's serious medical needs by failing to follow-up and ensure that Plaintiff received physical therapy and a dynamic splint sooner to assist Plaintiff's recovery.[4]

As a starting point, it has been established that the right hand injury occurred on October 18, 2015, surgery occurred on October 19, 2015, and that Dr. Kohlbrenner recommended "dynamic splinting by hand therapy" November 16, 2015. (ECF No. 35 at 52.) Dr. Kohlbrenner also noted on the same day that "Hand therapy key to recovery, very important that she gets there." (*Id.*)

NP Ezenwugo testifies that November 20, 2015 was the first time she saw Dr. Kohlbrenner's recommendation for "dynamic splinting." (Ezenwugo decl., ECF No. 32 ¶ 18). NP Ezenwugo ordered physical therapy services on the same day. It has been established that NP Ezenwugo ordered consultative outpatient services with a physical therapist on November 20, 2015, and Dr. Adame, a Doctor of Physical Therapy ("DPT"), provided physical therapy services to Plaintiff beginning on December 22, 2015.

Accordingly, the Court must decide whether there is genuine issue of material fact for trial as to the one-month delay in Plaintiff's receipt of physical therapy services. *See Jett*, 439 F.3d at 1096-98 (providing that a delay in the receipt of medical treatment can form the basis for a deliberate indifference to serious medical needs claim).

In order to demonstrate a triable issue on an Eighth Amendment claim in this context, Plaintiff would need to come forward with evidence that NP Ezenwugo acted with a

---

[4] It is noted that this is not the theory of liability alleged in the 1AC. However, for the sake of completeness, the Court will address it here.

11

"sufficiently culpable state of mind" in delaying Plaintiff's treatment. *See Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977 (providing that a prison official must have a "sufficiently culpable state of mind" to violate the Cruel and Unusual Punishments Clause). In other words, Plaintiff would need to demonstrate a triable issue as to whether NP Ezenwugo subjectively knew of and disregarded an excessive risk to Plaintiff's health and safety. *See Toguchi*, 391 F.3d at 1057. "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson*, 290 F.3d at 1188). "This 'subjective approach' focuses only 'on what a defendant's mental attitude actually was.'" *Id.* (quoting *Farmer*, 511 U.S. at 839, 114 S.Ct. 1970. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id.* (quoting *McGuckin*, 974 F.2d at 1059).

      Plaintiff argues NP Ezenwugo knew that the dynamic splint was vital to Plaintiff's recovery. NP Ezenwugo has submitted testimony that she discussed Dr. Kohlbrenner's recommendation for "dynamic splinting" with Plaintiff on November 20, 2015, and told Plaintiff that she (NP Ezenwugo) would fully follow the prescription for hand therapy and dynamic splinting. (Ezenwugo decl., ECF No. 32 ¶ 20). As discussed above, NP Ezenwugo placed the order for "physical therapy for hand therapy and dynamic splinting" on November 20, 2015. (ECF No. 35 at 68.) The order was promptly approved on November 23, 2015, and the scheduling for the physical therapy and dynamic splinting was to be performed by CDCR's Utilization Management team. (ECF No. 32 ¶ 24.) It was NP Ezenwugo's understanding that she had fulfilled her duties as a nurse practitioner at this time, and that the physical therapy and dynamic splinting services would be provided by a licensed hand therapist. (*Id.* ¶ 25.) NP Ezenwugo is not a hand therapist, has no experience in hand therapy, and did not possess the appropriate license or training to provide Plaintiff with hand therapy or dynamic splint. (*Id.* ¶ 26.) NP Ezenwugo testifies that she did not understand how a dynamic splint would impact

Plaintiff's recovery and did not see any specific instructions regarding the timeframe for Plaintiff to receive a dynamic splint in Dr. Kohlbrenner's recommendation. (*Id.*)

Plaintiff has not cited to any evidence that would indicate that NP Ezenwugo subjectively knew of and disregarded an excessive risk to Plaintiff's health and safety. The only relevant documents that could reflect upon NP Ezenwugo's subjective state of mind at the relevant time are the treatment records relating to Plaintiff's injury. For example, there appears to be considerable confusion as to which medical provider was responsible for placing the actual order for Plaintiff's dynamic splinting equipment. NP Ezenwugo testifies that she believed that the licensed hand therapist would place the order for the equipment. Without making any finding as to NP Ezenwugo's credibility, there is support in the record that the hand therapy specialist was responsible for ordering the dynamic splint. (ECF No. 35 at 52, medical record wherein Dr. Kohlbrenner notes "dynamic splinting by hand therapy"); (ECF No. 35 at 87, medical record wherein Dr. Kohlbrenner notes that "patient must see hand therapist → needs dynamic splint which needs to be ordered by hand therapist-imperative for recovery.")

Likely the most probative medical record concerning NP Ezenwugo's subjective state of mind appears to be the November 20, 2015 order form that NP Ezenwugo filled out for Plaintiff's physical therapy services. The form had three choices (Emergent, Urgent, or Routine) for "Requested Treatment/Service is:" and NP Ezenwugo chose "routine." (ECF No. 35 at 68.) It is unclear from the record what impact this choice would have had on the timing of Plaintiff's physical therapy and associated dynamic splinting. It is noted, however, that Dr. Kohlbrenner had indicated in her recommendation a few days earlier that "Hand therapy key to recovery, very important that she gets there." (ECF No. 35 at 52.)

At most, this evidence raises a question as to whether there was a lapse in NP Ezenwugo's professional judgment. In other words, there may be an issue of fact as to whether NP Ezenwugo acted negligently. However, well-established precedent is clear that any perceived lapse of NP Ezenwugo's professional judgment in this context would not equate to an Eighth Amendment violation. *See Toguchi*, 391 F.3d at 1057 ("'Mere negligence in

diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.'" *McGuckin*, 974 F.2d at 1059").

This evidence, construed in favor of Plaintiff, is insufficient to raise a triable issue as to whether NP Ezenwugo "disregarded an excessive risk to inmate health and safety" as is required to show deliberate indifference. *See Toguchi*, 391 F.3d 1057. The Court concludes that there is no genuine issue of material of fact preventing summary judgment in favor of NP Ezenwugo concerning the one-month delay in the receipt of physical therapy services for Plaintiff's injured arm. Therefore, summary judgment should be granted as to Defendant NP Ezenwugo.[5]

## VI. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Defendant NP Ezenwugo's motion for summary judgment be GRANTED, and that the Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 26, 2018**   /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE

---

[5] The Court has found that summary judgment is appropriate for Defendant NP Ezenwugo on the merits. Therefore, it need not address the qualified immunity argument at this time.

14

15